FILED
SUPERIOR COURT
OF GUAM

2021 JAN 25 PM 2: 50

CLERK OF COURT
BY: _____

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **INLAND BUILDERS CORPORATION**<br><br>Plaintiff, Counterclaim<br>Defendant<br><br>vs.<br><br>**GUAM ECONOMIC DEVELOPMENT AUTHORITY,** and Does 1 through 5<br><br>Defendant, Counterclaim<br>Plaintiff | **CIVIL CASE NO.: CV0070-17**<br><br>**DECISION AND ORDER**<br>Re: Guam Economic Development<br>Authority's Motion For Summary<br>Judgment |
| **GUAM ECONOMIC DEVELOPMENT AUTHORITY,**<br><br>Third Party Plaintiff<br><br>vs.<br><br>**ARCHITECTS LAGUANA & CRISTOBAL, LLC.,**<br><br>Third Party Defendant | |

## INTRODUCTION

This matter came before the Honorable Judge Anita A. Sukola on December 30, 2020, for a hearing upon Guam Economic Development Authority's Motion for Summary

Judgment. Plaintiff and Counterclaim Defendant, Inland Builders Corporation ("Inland"), is represented by Attorneys Thomas Sterling, Esq. and R. Marsil Johnson, Esq. The Defendant and Counterclaim Plaintiff, Guam Economic Development Authority ("GEDA"), is represented by Attorneys Thomas J. Fisher, Esq. and Rachel Taimanao-Ayuyu, Esq. Also present was Attorney Tom Tarpley, Esq., representing Third Party Defendant Architects Laguana & Cristobal, LLC. For the reasons set forth below, having reviewed the moving papers and the oral arguments of the parties, the Court **DENIES** the Defendant's Motion for Summary Judgment.

## BACKGROUND

On June 24, 2013, Inland and GEDA entered into a contract for the construction of the Guam and Chamorro Educational Facility in Hagatna. See Aff. of Thomas Fisher ¶ 4 (Oct. 29, 2020). During performance of the Contract, Inland allegedly encountered several delays attributable to GEDA and its representatives. Pl.'s Opp'n to Mot. for Summ. J. (Nov. 27, 2020). On August 6, 2014, Nelson Del Carmen, the President of Inland, delivered a letter to Enrico Cristobal, the Project Architect, which requested that Inland be allowed a time extension to document its claim. Id Enrico Cristobal disagreed that it was his responsibility to grant extensions, and eventually Inland was granted an extension through Lawrence Toves of GEDA. Id Inland delivered its first claim on September 19, 2014. Id On January 17, 2017, Inland filed its second claim against GEDA pursuant to the Contract. Mot. for Summ. J. (Oct. 29, 2020).

Inland served its first Government Claim on June 24, 2016, in accordance with 5 GCA § 6201 et seq. of the Government Claims Act, seeking additional compensation and a time extension. Id. GEDA served a formal notification of rejection of this claim on December 13, 2016.

On January 26, 2017, Inland filed a Complaint against GEDA with the Superior Court of Guam, alleging breach of contract and seeking damages for work related to the Agreement. See Compl. (Jan. 16, 2017).

On April 25, 2017, Inland filed a Second Government Claim related to the same construction project. Inland revised that Claim and put GEDA on notice of the revision on February 15, 2019. Pl.'s Opp'n to Mot. for Summ. J. (Nov. 27, 2020). The claim revised

CV0070-17, Inland Builders Corp v. Guam Economic Development Authority
Decision and Order (Motion For Summary Judgment).

Page 2 of 18

the damages calculation to include only actual costs, and lowered the amount of delay costs. *Id.*

GEDA filed the instant motion on October 29, 2020, and a hearing was held on December 30, 2020. GEDA argues at various points, that Inland failed to comply with Articles 10 and 12 of the Contract, that Inland's Government Claims were untimely, and the claims for damages were expressly disallowed within the Contract, and as such, summary judgement is appropriate to dispose of this suit.

Inland countered with arguments, including, that Article 10D was in violation of Guam Procurement Laws, that pursuing relief under Article 10D was an idle act, and that the Contract allowed for the damages it claimed based on its interpretation of the Contract, among other points. The Court heard the arguments of both parties, and subsequently took the matter under advisement.

## DISCUSSION

### I.     Summary Judgment Standard

Rule 56 of the Guam Rules of Civil Procedure regulates when a court may grant summary judgment. Guam R. Civ. P. 56. Summary Judgment is appropriate if the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that, taken in the light most favorable to the non-movant, the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c). See *Izuka Corp v Kawasho International, (Guam), Inc.,* 1997 Guam 19 ¶ 7, 8. A genuine issue of material fact exists "if there is 'sufficient evidence' which established a factual dispute requiring resolution by the fact-finder." *Fajardo ex rel. Fajardo v Liberty House Guam* 2000 Guam 4 ¶ 5 (*quoting Izuka Corp*, 1997 Guam 19 ¶ 7.). A material fact is "one that is relevant to an element of a claim or defense and whose existence might affect the outcome of a suit." *Id*

A court must draw inferences and view the evidence in the light most favorable to the nonmoving party. See *Edwards v Pacific Financial Corp*, 2000 Guam 27 ¶ 7. See also *Castro v. Peck, dba B B H.S. Contracting and Standard Plytrade Corp.,* 1998 Guam 10, ¶ 7. "If the movant can demonstrate that there are no issues of material fact, the non-movant cannot merely rely on allegations . . . . but must produce probative evidence."

*Edwards*, 2000 Guam 27 ¶ 7. Thus, the court's "ultimate inquiry is to determine whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Izuka*, 1997 Guam 10 ¶ 8.

## II.     There are Questions of Material Fact as To Whether Article 10D is a Valid Contractual Clause.

### a.  The Basic Contract and Article 10D of The Specifications Are Consistent

Inland first argues that Article 21.9.1 of the basic contract is inconsistent with Article 10D of the Specifications, and thus, "Inland had no obligation to comply with 10D." Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 7 (Nov. 27, 2020). Article 21.9.1 of the Contract "provides a procedure whereby GEDA will provide a final decision on any controversies which may arise between the parties." *Id.* While, "Article 10D of the Specifications provides a procedure whereby claims are fully documented and submitted to the 'Designer' who is empowered thereunder to issue a final and binding decision." *Id.* Further, the contract provides, in Article 3, "the Contract itself will control in the event of any inconsistency with the terms of the Contract and those set forth in the Specifications." *Id.* Thus, according to Inland, because the clauses are inconsistent and provide two different methods for dealing with the situation at hand, the Contract controls and Inland can avoid the requirement of written notice of a claim within ten (10) days as outlined in Article 10D(1).

In response, GEDA argues, "[t]hat this is a mistaken interpretation," because "Paragraph 10D applies to 'claims' for an adjustment of contract price or contract time and Article 21.9 applies to all controversies." Reply to Opp'n to Mot. for Summ. J. at 3 (Dec. 10, 2020). According to the Specifications, claims are defined as, "[a] demand or assertion by Owner or Contractor that seeks an adjustment of the Contract Price or Contract Times, or both, or relief as to the terms of the Contract. The responsibility to substantiate claims shall rest with the party making the claim." Aff. of Thomas J. Fisher, Ex. B, Article 10D(1) (Oct. 29, 2020). Thus, according to GEDA, Inland must follow the

notice requirements of Article 10(D)(2) because it was submitting a claim, which, according to the language of the Contract, is a more specific sub-type of controversy.

"[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to so do and to give both effect." *Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390, 395-396 (2nd Cir. 1985). See also *City of Columbia v. Paul N. Howard Co.*, 707 F.2d 338, 340 (8th Cir. 1983). Further, "[i]t is only when the parts of a contract are so radically repugnant that there is no rational construction that will render them effective and accordant that any part must perish." *Rushing v. Manhattan Life Ins. Co. of N.Y.*, 224 F. 74, 76 (8th Cir. 1915). This is true, "where two documents are contemporaneous and related or where one incorporates the other by reference." *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2nd Cir. 2002).

Here, there is a reasonable interpretation that puts Article 10D and Article 21.9.1 in accordance. As suggested by GEDA, the term "claims" refers to a smaller subset of controversies, as mentioned in Article 21.9.1, and only "claims" require the written notice requirement as outlined in Article 10D. Therefore, as the Court must interpret these clauses as consistent, if reasonably able to do so, Article 10D does apply to "claims" submitted by Inland. Thus, Article 10D is not avoided by Inland by way of inconsistency with the rest of the Contract at large.

**b. Article 10D's Potential Inconsistencies with the Procurement Law are a Question of Fact.**

Next, Inland argues that the notice requirement in Article 10D should not apply because Article 10D is in violation of the Guam Procurement Laws. Title 5 of the Guam Code Annotated, Section 5427(f) reads as follows:

> If the Chief Procurement Officer, the Director of Public Works, the head of the purchasing agency, or the designee of one of these officers does not issue a written decision required under Subsection (c) of this Section within sixty (60) days after written request for a final decision, or within such longer period as may be agreed

upon by the parties, then the contractor may proceed as if an adverse decision had been received.

5 GCA § 5427(f).

Meanwhile, Article 10D provides, "[w]ritten notice stating the general nature of each Claim, dispute, or other matter shall be delivered by the claimant to Construction Manager and Designer and the other party to the contract promptly (but in no event later than 10 days) after the start of the event giving rise thereto." Aff. of Thomas J. Fisher, Ex. B, Article 10D(2) (Oct. 29, 2020). It continues, "Designers will render a formal decision in writing within thirty (30) days after receipt of the last submittal of the claimant or the last submittal of the opposing party, if any," and "[i]f Designer does not render a formal decision in writing within the time stated in this Article 10, a decision denying the claim in its entirety shall be deemed to have been issued thirty-one (31) days after receipt of the last submittal." *Id.*, Ex. B, Article 10D(3)-(4). Thus, Inland argues that the Designer having final decision-making authority on potential claims is in violation of the Procurement Laws, and likewise, Article 10D "does not provide for a written demand for a decision within 60 days," as required by the Procurement Laws. Pl.'s Opp'n to Mot. for Summ. J. at 8 (Nov. 27, 2020).

GEDA simply argues that the Designer is a proper "designee of one these officers," and Inland agreed to that designation when it signed the contract. Thus, Article 10D is not in violation of the Procurement Laws. Reply to Opp'n to Mot. for Summ. J. (Dec. 10, 2020). GEDA does not address the second argument asserted by Inland, namely, that a final decision is to be rendered within thirty (30) days in Article 10D, but sixty (60) days in the Procurement Law. The Court will address the second argument first.

### 1. The Thirty Day Period for a Final Decision is Not in Violation of Guam Procurement Law

It is well established that "[p]rivate parties may not agree to alter statutory duties." *Imel v Laborer Pension Trust Fund for Northern California*, 904 F.2d 1327, 1330 (9th Cir. 1990) (*citing Fishgold v Sullivan Drydock & Repair Co.*, 328 U.S. 275, 285 (1946)). Further, "[o]n grounds of public policy, clauses in a contract which violate statutory

provisions are nugatory and without legal effect." *Boatland, Inc. v. Brunswick Corp*, 558 F.2d 818, 823 (6th Cir. 1977). Further, "if the illegal provision in a contract is severable, the courts will enforce the remainder of the contract after excising the illegal portion." *Pangelinan v. Gutierrez*, 2004 Guam 16 ¶ 16 (overturned on other grounds). Finally, "[i]n determining whether a particular provision is severable, the issue is whether the parties would have entered into the agreement absent the illegal parts. *Id. (quoting Panasonic Co v. Zinn*, 903 F.2d 1039, 1041 (5th Cir. 1990)).

However, "the intent and purpose of the objectives of the legislature must be ascertained to determine whether a provision in a contract, made in violation of a statute is void." *Boatland, Inc.*, 558 F.2d 818, 823 (6th Cir. 1977). Thus, "the validity of a contract [or provision therein] executed in violation of a statute . . . depends upon the intention of the legislature." 17A Am. Jur. 2d *Contracts* § 224 (2020).

Inland, in essence, is arguing that while the Procurement Law requires "a written decision . . . within sixty (60) days after written request for a final decision, or within such longer period as may be agreed upon by the parties," the Contract called for a time period shorter than sixty (60) days, and thus Article 10D is void. However, the sixty (60) day time period outlined in the Procurement Law is designed to protect contractors from waiting endlessly on a decision regarding potentially actionable claims from a government bureaucracy. A shorter time period is even greater protection for the Contractor, and thus, this Court is unconvinced that the legislature intended to void contractual clauses that called for a shorter time period to issue a final decision. Therefore, the Court finds that the thirty (30) day period for the issuance of a final decision is not in violation of Guam Procurement Law.

Alternatively, even if the thirty (30) day period is an illegal clause in the contract, the parties would have entered into the agreement absent this provision, and thus it is severable. *Pangelinan*, 2004 Guam 16 ¶ 16. Therefore, even absent the thirty (30) day decision provision, the rest of Article 10D still stands, and Inland remains subject to it.

2. **Who the Designer was and Whether the Designer was a Proper Designee of the Head of the Purchasing Agency are Questions of Fact.**

CV0070-17. Inland Builders Corp v. Guam Economic Development Authority Decision and Order (Motion For Summary Judgment).

Page 7 of 18

According to the Guam Procurement Laws a "Designee means a duly authorized representative of a person holding a superior position." 5 GCA § 5030(i). Thus, the "Designee" as defined in the Guam Procurement Laws is a function of agency law. An agency relationship "is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control." Restatement (Second) of Agency § 1(1) (1958). See also *Dearborn v Mar Ship Operations, Inc.*, 113 F.3d 995, 997 (9th Cir. 1997). Existence of an "agency is a question of fact for the determination of the jury." *Pacific Can Co. v Hewes*, 95 F.2d 42, 46 (9th Cir. 1938).

Here, GEDA is arguing that the "Designer," as mentioned in Article 10D, is a proper designee of GEDA in accordance with Guam Procurement Laws. Meanwhile Inland is arguing that the "Designer" is not a proper designee and therefore Article 10D is contrary to the Guam Procurement Laws, and thus is an illegal clause that does not apply to the case before us.

On August 6, 2014, Inland sent a letter, asking for a time extension to submit their claim, to Architect Enrico Cristobal, under the impression that he was the "Designer" as laid out in the contract. See Decl. of Nelson Del Carmen, Ex. A (Nov. 27, 2020); Decl. of Thomas C. Sterling, Ex. D, Line 6 (Nov. 27, 2020). Enrico Cristobal responded to that letter claiming he was "not the party to respond to this issue." See Decl. of Nelson Del Carmen, Ex. B (Nov. 27, 2020). In a deposition, Lawrence Toves of GEDA stated that Enrico Cristobal was "the designer of record," and should have responded to the claim. Decl. of Thomas C. Sterling. Ex. E, at 2, Line 22 (Nov. 27, 2020).

Therefore, in order to determine whether, either, Article 10D or GEDA's application of that Article, was inconsistent with the Guam Procurement Laws, it is necessary to determine who the "Designer" was as named in Article 10D, and whether that agency relationship was properly formed. These are both questions of fact for determination by the fact finder, and thus, summary judgment is inappropriate on this point. See *Fajardo ex rel. Fajardo v. Liberty House Guam* 2000 Guam 4 ¶ 5. Therefore, the application of Article 10D to Inland has unanswered genuine questions of material fact, and the Court cannot grant summary judgment as to this argument.

## III. The Remedy Outlined in Article 10D was not Illusory and Thus, Pursuing it was not An Idle Act.

Next, Inland argues that it was not required to pursue relief under Article 10D since doing so would be an idle act because the remedy under that section was illusory. Inland continues, "[t]he claims Inland submitted were not even addressed. The appeal procedure did not exist because there was no Article 16 contained in the Specifications." Pl.'s Opp'n to Mot. for Summ. J. (Nov. 27, 2020). Thus, according to Inland, an effective remedy was lacking, and therefore, "Inland was not required to submit its claims in compliance with Article 10D . . ." *Id.*

"The law neither does nor requires idle acts." 20 GCA § 15124. Section 15124 is identical to California Civil Code Section 3532. Thus, California cases are persuasive. See *Gibbs v. Holmes*, 2001 Guam 11, ¶15 ("[T]o the extent that the New York . . . statutes contain provisions that are . . . identical . . . .to Guam's statutes, we find New York law to be persuasive). Exhaustion of administrative remedies is not required where effective administrative remedies are lacking. See *Endlerv Schutzbank*, 65 Cal. Rptr. 297 (1968). Examples include submitting claims to an entity that lacks authority to act on them or where it is a futile, useless, or idle act. See *McBride Cotton and Cattle Corp , v Veneman*, 290 F.3d 973, 982 (9th Cir. 2002); See also *Thorman v International Alliance of Theatrical Stage Emp. And Moving Pictures Mach. Operators*, 320 P.2d 494, 498 (Cal. 1958).

Here, however, the submission of the claim to the "Designer" under Article 10D was not a futile, useless, or idle act. Inland claims that the "Designer" never addressed any of their claims, and the appeal procedure did not exist. Pl.'s Opp'n to Mot. for Summ. J. (Nov. 27, 2020). Article 16, which supposedly laid out the appeal procedures, was not in the Contract. However, as explained above, Article 10D and Article 21.9.1 are not opposed and thus mutually exclusive, but rather both are meant to function simultaneously. Therefore, the contract does contain an appeal procedure as outlined in the Contract under Sections 21.9.3(i) and (ii). Further, the Contract in Article 10D(4), allows for, in the absence of a formal written decision by the "Designer," that "the Claim in its entirety shall be deemed to have been issued thirty one (31) days after receipt of the last submittal." Aff. of Thomas J. Fisher, Ex. B (Oct. 29, 2020). Thus, it is immaterial whether

the "Designer" addresses the claim, because a non-response is a denial, and a denial paves the way for an appeal pursuant to Sections 21.9.3(i) and (ii). Therefore, the submission of a claim under Article 10D is not an idle act.

### IV. Inland Was Not Excused From Giving Notice Due to Delays Caused by GEDA

Next, Inland argues that it "was not required to give any notice or make any claim to 10D or any other provision of the contract or Specifications in order to be entitled to a time extension for delays caused by GEDA." Pl.'s Opp'n to Mot. For Summ. J. (Nov. 27, 2020). Inland cites Title 18 of the Guam Code Annotated, Section 82301(1), for the proposition that delays caused by GEDA excuse the notice requirement in Article 10D. That section reads as follows:

> The want of performance of an obligation, or an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:
>
> 1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse:

18 GCA § 82301.

Title 18 of the Guam Code Annotated, Section 82301 is identical to former California Civil Code Section 1511, and thus California cases interpreting that section are persuasive. See Gibbs v. Holmes, 2001 Guam 11, ¶15. Inland asserts that GEDA caused the delays during the construction of the Museum, and thereby are excused from giving notice. However, the obligation in question is not the construction of the Museum, but rather the obligation to give timely notice. Delay caused by the opposing party excuses the obligation to be performed and not necessarily the entire contract. See Chinese Hosp. Ass'n v. Jacobs Eng'g Grp., Inc., 2019 WL 4168949 *3 (N.D. Cal. 2019); See also Wiley v Caliber Home Loans, Inc., 2017 WL 786287 *4 (N.D. Cal. 2017). Inland has offered no

CV0070-17, Inland Builders Corp. v. Guam Economic Development Authority
Decision and Order (Motion For Summary Judgment).

Page 10 of 18

evidence that GEDA caused delay in their obligation to give timely notice, and thus, their performance of giving such notice is not excused.

**V.    There Are Genuine Issues of Material Fact as To Whether GEDA is Equitably Estopped from Asserting that Inland's Second Claim was Untimely Under Article 10D.**

According to the Ninth Circuit, "[e]quitable estoppel ordinarily presents a question of fact unless only one reasonable conclusion can be drawn from undisputed facts." *Shamrock Development Co. v City of Concord*, 656 F.2d 1380, 1386 (9th Cir. 1981). Inland argues that the letter sent by Mr. Del Carmen to GEDA on May 27, 2015, "indicating that it was his intention, absent objection by the "Designer", to file his fully documented additional claims after substantial completion of the project," estopped GEDA from claiming the second claim was untimely, after it was not objected to by GEDA or any of its representatives. Pl.'s Opp'n to Mot. for Summ. J. (Nov. 27, 2020).

The doctrine of equitable estoppel is codified in Guam as follows:

> Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing to be true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it;

6 GCA § 5106(3).

The elements of equitable estoppel include: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonable believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Mobil Oil Guam, Inc., v. Young Ha Lee*, 2004 Guam 9 ¶ 24.

Here, due to Inland's May 27, 2015, letter, GEDA was potentially apprised of the fact that Inland did not intend to file its second claim until after substantial completion of

the project. GEDA did not respond to the letter, and thus, Inland could reasonably believe that this approach was acceptable to GEDA. Inland potentially had no reason to believe that GEDA was not amenable to this approach, and Inland was injured when they relied on GEDA's silence. The Court is reminded that it must draw inferences and view the evidence in the light most favorable to the nonmoving party. See *Edwards v. Pacific Financial Corp.*, 2000 Guam 27 ¶ 7. Thus, there are genuine issues of material facts as to whether GEDA is equitably estopped from asserting that Inland's second claim was untimely under Article 10D.

## VI. There Are Genuine Issues of Material Fact as to Whether GEDA Waived the Article 10D Notice Requirement.

The waiver of a provision that contractual alterations be in writing is allowed in public contracts in certain instances. "A contractor is entitled to recover for alterations . . . notwithstanding noncompliance with a stipulation requiring a written order, where the work has been orally ordered, requested, directed, authorized, or consented to by the owner . . ." 13 Am. Jur. 2d *Building, Etc. Contracts* § 24. However, orally ordering alterations is not the only effective means of waiver. Another method of waiver is, "a course of dealing which repeatedly disregards such stipulation." *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So.2d 495, 508 (Miss. 2007). Further, "[t]o establish waiver, [the party claiming a waiver existed] must show some facts which indicate that the parties mutually adopted a mode of performing the contract which differs from its terms." *Rissler v. McMurray Co. v. Sheridan Area Water Supply Joint Powers Bd*, 929 P.2d 1228, 1234 (Wyo. 1996). Finally, "[g]enerally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." *St. Agnes Med Ctr. v. PacifiCare of California*, 82 P.3d 727, 733 (Cal. 2003). See also *Hurlbut v. Butte-Kan. Co.*, 243 P. 324 (1926).

Here, according to Inland, they "made thirty-five (35) change proposal requests for more time, money, or both, which did not comply with Article 10D and yet were approved by GEDA." Pl.'s Opp'n to Mot. for Summ. J. (Nov. 27, 2020) (*citing* Decl. of Nelson Del Carmen ¶ 13). This could tend to indicate a course of dealing which repeatedly disregarded Article 10D. As the Court must draw inferences and view the evidence in the light most

favorable to the nonmoving party, there are genuine issues of material fact as to whether GEDA waived the notice requirements of Article 10D. *See Edwards v. Pacific Financial Corp.*, 2000 Guam 27 ¶ 7.

**VII.    There Are Genuine Issues of Material Fact as to Whether Inland Filed Its First Government Claim in a Timely Manner.**

It is undisputed that on September 19, 2014, Inland submitted its first contract claim for alleged 116 days of delay caused by GEDA. Mot. for Summ. J. (Oct. 29, 2020). It is also undisputed that Inland filed a government claim for that delay claim on June 24, 2016. *Id.* Therefore, pursuant to the Government Claims Act, GEDA claims that the submission of the government claim barred due to untimeliness.

The Government Claims Act requires that "claims under this Act must be filed within 18 months from the date the claim arose . . ." 5 GCA § 6106. For purposes of the Government Claims Act, a claim arises when the claimant exhausts the administrative remedies afforded by the Procurement Laws. *See Pacific Rock Corp. v Department of Education*, 2001 Guam 21 ¶ 39. Article 21.9.1 of the Contract was nearly identical to the Procurement Law when it stated, "[i]f the controversy is not resolved by mutual agreement, then the controversy shall be decided by GEDA in writing within sixty (60) days after CONTRACTOR shall request GEDA in writing to issue a final decision." Compare Aff. of Thomas J. Fisher, Ex. A, Art. 21.9.1 (Nov. 29, 2020) to 5 GCA § 5427.

The Guam Supreme Court, interpreting the Procurement Law statute, "see[s] three possible scenarios that claimants may face during their dispute resolution with the Chief Procurement Officer . . . the second [scenario] is that the parties agree to prolong the final decision beyond the sixty days which is allowable under the 'within such longer period as may be agreed upon by the parties' clause of the provision." *Pacific Rock Corp.*, 2001 Guam 21 ¶ 40. Further, "the determination of when the Chief Procurement Officer or his representative renders a final decision as a result of all the negotiations becomes a factual issue that a court is compelled to examine." *Id*

Here, the statute of limitations to file a government claim began to run after a final decision was rendered by GEDA. Inland claims that a final decision was not rendered until May 30, 2015, after GEDA did not respond to a written request to make a final decision.

GEDA on the other hand, claims the final decision was issued sixty (60) days after the claim was initially sent to GEDA on September 19, 2014. Therefore, there is a genuine dispute as to material facts surrounding when a final decision was rendered, and thus, summary judgment is inappropriate as to the timeliness of Inland's first government claim.

## VIII. Inland's Revised Second Claim Relates Back to the Original Second Claim and Thus is Within the Statute of Limitations.

Inland filed its Claim 2 for an amount of damages "based on a theory of recovery under the Eichleay formula on January 17, 2017." Reply to an Opp'n to a Mot. for Summ J. (Dec. 10, 2020). Inland then revised its claim, to reduce the claim amount, based on actual costs, on November 19, 2019. *Id* GEDA, therefore argues that "a revised claim which wholly abandons the basis of the original claim constitutes a new claim," and thus, falls outside the statute of limitations period.

The Government Claims Act does allow the revision of claims stating, "[n]o action shall be instituted, nor judgment granted, for a sum in excess of the amount of the claim presented to the Claims Officer, unless the increased amount of the claim is shown to be based upon new evidence not reasonably discoverable at the time the claim was filed with the Claims Officer." 5 GCA § 6213. Thus it appears that the Government Claim Act allows the revision of claims, so long as the revision is for a lesser amount, or if new evidence is discovered that allows a greater amount. Further, although not implicating a claim under the Government Claim Act, the Guam Rules of Civil Procedure state, "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." GRCP 15(c)-(c)(2). "An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action." *Pointe San Diego Residential Community, L.P v Procopio, Cory, Hargreaves & Savitch, LLP*, 125 Cal. Rptr. 3d 540, 550 (Cal. Ct. App. 2011). Finally, "the critical inquiry is whether the defendant has adequate notice of the claim based on the original pleading." *Id*

Here, the revised claim lessened the amount of damages owed and "GEDA was put on notice of this revision over 19 months prior to the date it filed its motion for summary

judgment." Pl.'s Opp'n to Mot. for Summ. J. (Nov. 29, 2020). Further, the underlying claim remains the same and it arises out of the same occurrence or transaction as the original claim. Therefore, the Court finds that the Amended Complaint relates back to the date of the original complaint, and thus falls within the statute of limitations imposed by the Government Claims Act.

## IX. The Term Extended Project Site Overhead is Ambiguous and Determining its Meaning is a Question of Fact.

The Specifications allow for damages in the event of a delay, if the delay was not the responsibility of the Contractor. The Specifications state, "[a]ny adjustment to the Contract Price . . . shall be limited to the increase, if any, of Contractor's Direct Costs in performing the Work as a result of that portion of any delay or delays that caused the Contract Times to be extended in excess of sixty (60) days." Aff. of Thomas J. Fisher, Ex. B, Art. 12.F.3 (Oct. 29, 2020). It continues, "Direct Costs for the purposes of this subparagraph are: a. Extended Project Site overhead such as wages and benefits for Contractors supervisory personnel, stationed full time at the Project Site; utilities, trailer rental and related expenses for Contractor's Project Site Office; and b. Wage escalations for trade persons incurred because of such delays." Id. However, "[i]n no event shall Contractor be entitled to any compensation or damages in connection with any delay, including, without limitation, consequential damages . . ." Id.

Another section of the Specifications states as follows:

3. Contractor's Fee for overhead and profit:

    a. The fee allowed for overhead and profit shall be deemed to include:

        1. Field and office supervision and administration personnel, including the field superintendent;

        2. General insurance, except that listed as the labor burden;

        3. Use of existing small tools;

        4. Shop Burden;

        5. Estimating and administrative costs;

        6. Indirect costs related to the Work, including impact costs resulting

from the performance of cumulative Change Orders; and

7. Any other costs resulting from the change expressly enumerated as a Cost of Work, including general requirements that are directly attributable to the change shall he considered Cost of Work (e.g., protection, clean-up, reproduction and safety).

*Id.* at 12.3.A.

Finally, Cost of Work is defined as, "the sum of all costs necessarily incurred and paid by the Contractor in the proper performance of the Work." Further, "when a Claim for an adjustment in Contract Price is determined on the Cost of Work, the costs to be reimbursed to the contractor will be only those additional or incremental costs required . . . because of the event giving rise to the claim." *Id.* at 11.A.1.

First, GEDA invites the Court to limit the definition of "Extended Project Site overhead," outlined in Article 12.F.3, as recoverable direct costs for delays, to the three listed examples, which are: "wages and benefits for Contractors supervisory personnel, stationed full time at the Project Site; utilities, trailer rental and related expenses for Contractor's Project Site Office and [w]age escalations for trade persons incurred because of such delays." *Id* at 12.F.3. However, the Article in question precedes these examples with "such as." Inland, is therefore correct in asserting that the phrase "such as" means, "that the categories provided after the phrase are examples, not a limited set of categories." Pl.'s Opp'n to Mot. for Summ. J. (Nov. 29, 2020). See *United States v. Aisenberg*, 247 F. Supp. 2d 1272, 1308 (M.D. Fla. 2003). Therefore, the examples provided in the Contract are not exclusive, and defining "Extended Project Site overhead" becomes imperative.

Inland, next argues, that "Extended Project Site overhead," should be interpreted piece meal, word by word. It goes on to claim that when analyzed in this fashion, the term overhead is defined earlier in the contract to include Cost of Work. See Aff. of Thomas J. Fisher, Ex. B, Art. 12.3.A (Oct. 29, 2020). Cost of Work is in turn defined in Article 11.A.1, and thus all damages claimed by Inland are allowable under the Contract, as included in Extended Project Site overhead through the Cost of Work Provision. *Id* at 11.A.

"A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations." *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 14. Further, "[u]nder the principle of noscitur a sociis, the meaning of unclear words may be gleaned by reference to other words associated with it." *Schenkel & Schultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 551 (7th Cir. 1997). In Guam, "[t]echnical words are to be interpreted as usually understood by persons in a profession or business to which they relate, unless clearly used in a different sense." 18 GCA § 87111. Further, "it is a well-settled principle that if a contract is ambiguous on its face, a court must look to extrinsic evidence to interpret the contract." *Flores*, 2004 Guam 25 ¶ 14. Finally, "[t]he interpretation of a contract presents a mixed question of law and fact. The existence of an ambiguity must be determined as a matter of law . . . [and] [i]f an ambiguity exists, a question of fact is presented." *State Farm Mut. Auto. Ins. Co. v. Fernandez*, 767 F.2d 1299, 1301 (9th Cir. 1985).

Here, the Court will apply the principle of noscitur a sociis ("it is known from its associates") that the phrases, "Extended Project Site overhead" and "Contractor's Fee for overhead and profit," are not to be defined as the same, despite Inland's efforts to characterize them both as "overhead." The words surrounding overhead in each of these clauses invites different interpretations. One seemingly limited to the extension of time on the project site, and the other around a fee to ensure profit to the contractor. Thus, Extended Project Site overhead remains undefined within the contract. There are at least two different reasonable interpretations of the phrase, one of which does not include Cost of Work and another that does. Therefore, the phrase is ambiguous, and extrinsic evidence will need to be provided to determine the technical meaning of the phrase. Thus, the meaning of "Extended Project Site overhead" presents a genuine issue of material facts, and summary judgment is not appropriate.

Overall, there exists genuine issues of material fact as to, whether Article 10D is in violation of the Guam Procurement Law, whether GEDA is equitably estopped from asserting Inland's second claim was untimely under Article 10D, whether GEDA waived the notice requirements of Article 10D, whether Inland filed its first government claim in a timely manner, and as to the question of damages, the meaning of the phrase "Extended Project Site overhead."

## Conclusion

CV0070-17, Inland Builders Corp. v. Guam Economic Development Authority
Decision and Order (Motion For Summary Judgment).

Page 17 of 18

Thus, based on the foregoing, Guam Economic Development Authority's Motion For Summary Judgment is **DENIED**.

FP 02/25/2021 at 9:45 am
Zoom Info.
Meeting ID: 746 686 1201
Passcode: JAAS

SO ORDERED this 1/26/2021

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam